UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RENEE INEZ MCGOWAN,<br><br>              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>              Defendant. | Case No. C12-281-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Renee Inez McGowan seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by (1) finding at step two that depression, sleep apnea, and migraine headaches were not severe impairments; (2) rejecting the opinions of the treating doctor Tim Burner, M.D.; and (3) finding her testimony not credible. Dkt. 12 at 2. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**BACKGROUND**

The procedural history is not at issue and is not discussed.[1] At issue is the ALJ's written decision finding Ms. McGowan not disabled. Utilizing the five-step disability evaluation

---

[1] *See* Dkt. 12 at 2 (opening brief); and Dkt. 16 at 2 (response).

REPORT AND RECOMMENDATION - 1

process,[2] the ALJ found at step one, Ms. McGowan had not worked since May 15, 2008; at step two Ms. McGowan had the following severe impairments: degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disorder, history of congestive heart failure, restless leg syndrome, and obesity; at step three, these impairments did not meet or equal the requirements of a listed impairment;[3] that Ms. Ms. McGowan had the residual functional capacity ("RFC") to perform less than the full range of sedentary work in that she could lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk about two hours and sit about six hours; and occasionally stoop, kneel, crouch, crawl, balance and climb ramps and stairs, she should never climb ladders ropes or scaffolds and should avoid extreme heat and humidity and concentrated exposure to vibration, fumes, odors, gases and poor ventilation and hazards; at step four, Ms. McGowan could not perform her past work; and at step five, as there are jobs Ms. McGowan can perform, she is not disabled. Tr. 21-37.

The Appeals Council denied Ms. McGowan's request for review making the ALJ's decision the Commissioner's final decision.  Tr. 1-6.

## DISCUSSION

**A.     The ALJ's step two findings**

Ms. McGowan contends the ALJ erroneously found at step two that sleep apnea, migraine headaches, and depression were not severe impairments.  Dkt. 12 at 7.  At step two, Ms. McGowan had the burden to show each of these conditions was a medically determinable impairment, and the impairment was severe for at least 12 continuous months.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The step two inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An ALJ

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

may find an impairment "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Id.*  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a).

### *1.  Sleep apnea*

The ALJ found C-PAP controlled Ms. McGowan's sleep apnea, and that apnea was therefore not a severe impairment. Tr. 27.  Ms. McGowan contends substantial evidence does not support this finding.  Ms. McGowan agrees Dr. Richard Pisani, M.D., reported C-PAP made her "comfortable," but argues the ALJ erred because Dr. Pisani recommended further checks and because she testified she was "still tired during the day despite the use of the C-PAP." Dkt. 12 at 10.

The record, however, does not show Dr. Pisani believed Ms. McGowan's apnea was not controlled by C-PAP.  Tr. 277.  Rather Dr. Pisani's progress notes state Ms. McGowan was "comfortable" and that he would "call her next week with results and will instruct her in how to adjust her pressure if necessary." *Id.*  The doctor's notes thus indicate he believed C-PAP was controlling Ms. McGowan's apnea and that adjustments would be made only *if necessary*.  Given Dr. Pisani's report, the ALJ's finding that apnea was controlled and thus not a severe impairment is both reasonable and supported by the record.  Moreover, the ALJ's finding regarding the efficacy of C-PAP  is supported by Catherine Quing Howe's M.D., subsequent report that Ms. McGowan was using C-PAP and although she still feels fatigue, "her sleep is good."  Tr. 421.

Ms. McGowan's testimony also does not establish C-PAP failed to control her apnea.  First, as noted above, the reports of both Dr. Pisani and Dr. Howe evidence that Ms. McGowan had good sleep using C-PAP, and the device controlled her apnea.  And second, Ms. McGowan's

fatigue has another basis—depression—that would explain her feelings of fatigue notwithstanding the efficacy of C-PAP.  In her report Dr. Howe stated: "the severity of her depression seems to have remained the same over the years despite treatment with quite a few antidepressants.  She endorses significant fatigue, low mood, and feelings of lack of motivation and hopelessness."  *Id.*  Accordingly, the Court finds the ALJ did not err in finding sleep apnea was not a severe impairment and affirms the Commissioner in this regard.

### 2. *Migraine headache*

The ALJ found migraine headache was not a severe impairment because the impairment "appear[ed] to be controlled with Imitrex."  Tr. 26.  The ALJ, however, failed to point to anything in the record that supports this finding.  The Commissioner also argues as "Plaintiff took Imitrex, Maxalt and Vicodin for her symptoms," the ALJ should be affirmed.  Dkt. 16 at 8.  The fact a claimant takes medications, alone, does not establish an impairment is controlled, and has no more than a minimal effect on an individual's ability to work.  The three pages the Commissioner cited in support of his argument bear this out.  Two pages indicated Ms. McGowan took the medications, but nothing more.  Tr. 425, 411.  The other page indicated "Maxalt and Vicodin help" but did not indicate these drugs controlled, or the degree to which these drugs "helped."  Tr. 392.  The Commissioner cites to nothing in the record that establishes the medications so effectively controlled Ms. McGowan's migraine headaches, that it can be concluded the headaches have no than a minimal effect on her ability to work.  Accordingly, substantial evidence does not support the ALJ's finding that the migraines were "controlled" by medications.

The ALJ also found migraines were not a severe impairment because Ms. McGowan "successfully worked with the impairment in the past" and there was no evidence the impairment

REPORT AND RECOMMENDATION - 4

worsened since Ms. McGowan last worked.  The fact Ms. McGowan worked in the past with migraines may show the impairment is not disabling, but it does not show the impairment has no more than a minimal impact on her ability to work.  Ms. McGowan testified migraines caused her to miss work once or twice a month; work the "really early shift" to avoid the onset of migraines which usually occurred in the afternoon; and the migraines lasted at least six hours, and that she takes two medication doses, and falls asleep after the second dose.  Tr. 61-62.

An ALJ must consider all of a claimant's statements regarding how the claimant's symptoms affect her daily activities and ability to work.  20 C.F.R. §§ 404.1529(a), 416.929(a).  Here, given Ms. McGowan's uncontradicted testimony regarding the impact of her migraine headaches, the ALJ erred at step two in finding migraine headache was not a severe impairment.

### *3.     Depression*

The ALJ found Ms. McGowan first "mentioned the impairment in June 2010" and was prescribed medication.  Tr. 27.  The ALJ found depression was not a severe impairment noting that on September 24, 2010, Ms. McGowan reported to Dr. Burner her mood "significantly improved" and that her memory problems were better since she began taking Citalopram a month earlier.  *Id.*  Dr. Bruner later opined in a December 1, 2010, physical residual functional capacity questionnaire that Ms. McGowan was unable to work a full eight-hour day and would miss four days a month.  Tr. 414-18.  The ALJ rejected the doctor's December 2010 opinions as conclusory, lacking in any explanation for the degree of limitation found, and inconsistent with the doctor's treatment notes, and concluded depression did not cause more than minimal limitations on Ms. McGowan's ability to work and was thus non-severe.  Tr. 31.

The ALJ further analyzed depression applying the "four broad functional areas known as the 'paragraph B' criteria.'"  *Id.*  In so doing, the ALJ found Ms. McGowan had "mild limitation"

in (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) no episodes of decomposition.  *Id.*  Based on the record before the ALJ, the Court cannot fault the ALJ for finding depression was not a severe impairment at step two.  However, after the ALJ issued his opinion, the Appeals Council considered additional medical evidence submitted by Ms. McGowan regarding depression.  Tr. 4, 419-42.  "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence."  *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159–60, 1163 (9th Cir. 2012).[4]

Based on the new evidence the Appeals Council considered, the ALJ's finding that depression is not a severe impairment is not supported by substantial evidence.  The new evidence consists of medical reports from the University of Washington Medical Center, including a psychiatric evaluation.  The mental status examination contained in these reports noted Ms. McGowan's "affect is depressed and slightly constricted."  Tr. 422.  Dr. Howe, M.D., who evaluated Ms. McGowan, diagnosed her with "Axis I major depressive disorder, recurrent, severe, without psychotic feature."  *Id.*  Dr. Howe reported Ms. McGowan "endorses significant fatigue, low mood, and feelings of lack of motivation and hopelessness."  Dr. Howe also administered the PHQ-9,[5] a standardized depression screening instrument and assessed a score of

---

[4] *See also Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011*) (citing Ramirez v. Shalala,* 8 F.3d 1449, 1451–54 (9th Cir. 1993)) (This Court may consider new evidence submitted for the first time to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence.); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n. 2 (9th Cir. 2007) (As the Appeals Council considered the new evidence, so may the reviewing court).

[5] The PHQ-9 is a nine item depression scale of the patient health questionnaire. The nine items of

REPORT AND RECOMMENDATION - 6

17, indicating moderate to severe depression. *Id.*  In her assessment and treatment recommendations, Dr. Howe opined Ms. McGowan had a history of chronic and severe major depression and that her pain and depression symptoms aggravated each other.  Tr. 423.  The doctor opined her depression needed to be treated more aggressively and that her current prescription of 30 mg of citalopram "has been inadequate for relieving her symptoms."  *Id.*  Dr. Howe recommended increasing her citalopram dosage, restarting Wellbutrin and also prescribed bupropion.  *Id.*

Based on the new evidence submitted to the Appeals Council regarding Ms. McGowan's depression and its interactive relationship with her pain, the ALJ's step two finding that depression is not a severe impairment can no longer be deemed supported by substantial evidence in the record as a whole.  Contrary to the ALJ's finding, the new evidence shows Ms. McGowan's depressive symptoms were not being adequately controlled by the medications as earlier indicated by Dr. Burner in September 24, 2010.  The new evidence also indicates Ms. McGowan's depression is moderate to severe, and not mild as found by the ALJ.  Accordingly, based on the new evidence and record as a whole, substantial evidence does not support the ALJ's step two finding pertaining to depression.

**B.      The ALJ's assessment of Tim Burner's, M.D., opinions**

On May 6, 2009, treating doctor Tim Burner, M.D., opined it was unlikely Ms. McGowan would be able to return to the work force and that she should apply for disability benefits.  Tr. 296.  In December 2010, Dr. Burner opined Ms. McGowan was incapable of

---

PHQ-9 are based directly on the nine diagnostic criteria for major depressive disorder in the DSM-IV (Diagnostic and statistical Manual Fourth Edition).  *See* Impact Evidence-based Depression Care at mpact-uw.org/tools/phq9.html; and the MacArthur Initiative on depression and primary care: Using PHQ-9 Diagnosis and Score of Initial Treatment Selection at Depression-primarycare.org/clinicians/toolkits/materials/forms/phq9/score_table/.

REPORT AND RECOMMENDATION - 7

tolerating even a low stress job due to "too much pain, fatigue & depression to function." Tr. 415. The ALJ gave no weight to Dr. Burner's opinions on the grounds that

> Dr. Burner did not explain why the claimant was this limited. His treatment notes reflect reports of occasional back pain and need for pain medication. His notes do not reflect a worsening of condition. As they are inconsistent with his treatment notes and conclusory, I give these opinions no weight.

Tr. 31. Although these are legitimate reasons to discount the doctor's opinions, the Commissioner on remand should reevaluate Dr. Burner's opinions. It would be appropriate for the Commissioner to reevaluate Dr. Burner's opinions on remand because, as noted above, the ALJ's findings as to depression and its interaction with Ms. McGowan's pain symptoms are no longer supported by substantial evidence based on the new evidence presented to the Appeals Council after the ALJ issued his decision.

**C.     The ALJ's assessment of Ms. McGowan's credibility**

The ALJ found Ms. McGowan's testimony about her symptoms not entirely credible on two grounds. First, the ALJ found "she went to school full-time for two years starting in 2007. Thus she had significant abilities to sit, stand, and walk as evidenced by her ability to attend school and complete homework." Tr. 30. This is not a clear and convincing reason to discount Ms. McGowan's testimony because Ms. McGowan's school activities occurred before her amended onset date of May 15, 2008, and are thus not probative of the severity of her symptoms following the onset date.

The Commissioner contends the fact Ms. McGowan initially claimed disability beginning December 1, 2007, while she was attending school, is a valid grounds to discount Ms. McGowan's testimony. The Commissioner argues this is because the ALJ may appropriately consider Ms. McGowan's "statements to the agency and her activities" even if they occurred

REPORT AND RECOMMENDATION - 8

before the amended onset date. Dkt. 16 at 10. However, the ALJ did not discount Ms. McGowan's testimony on this basis. Instead, the ALJ found Ms. McGowan's school attendance 2007 uncut her credibility because her attendance, not her statements, established she was not as limited as she claimed. Accordingly, the Commissioner's argument is an improper post hoc rationalization the Court cannot rely upon. *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (holding the Court cannot affirm based on reasoning the ALJ did not discuss).

The ALJ also discounted Ms. McGowan's testimony because she "reported she stopped working in 2006 when her company relocated to California (Ex. 13F p.2). This suggests that the claimant stopped working for reasons not related to the allegedly disabling impairments." Tr. 30. Citing to *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), the Commissioner argues that this alone is sufficient grounds for the ALJ to disregard Ms. McGowan's testimony about her symptoms. Dkt. 16 at 10.

The facts of *Bruton* are quite different than the facts in this case. In *Bruton*, the claimant's alleged onset date of disability was the same date that he was laid off from his job as a machinist. *Bruton*, 268 F.3d at 826. Although the claimant claimed he stopped working for medical reasons, he waited nine months before seeking any medical treatment and also admitted he had left his job because he had been laid off, not because of an injury. *Id*. at 828. In contrast, the record in Ms. McGowan's case does not support the inference that she sought disability benefits simply because she was laid off from work. Rather at least a year passed between the time she stopped working in 2006 and her first application for benefits alleging an onset date of December 2007. Hence, although there is no dispute Ms. McGowan stopped working in 2006, for reasons unrelated to her alleged impairments, her last job ended long before her alleged

onset.  Accordingly, the reasons Ms. McGowan left her 2006 job was not a proper basis to discount her credibility.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ should (1) consider depression and migraine headaches to be severe impairments for purposes of a step two analysis; (2) reevaluate the opinions of Dr. Burner and the testimony of Ms. McGowan; (3) develop the medical record as necessary; and (4) proceed to remaining steps as appropriate.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **October 31, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **November 2, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 17th day of October, 2012.

BRIAN A. TSUCHIDA  
United States Magistrate Judge